**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| **JEFFREY MONK, individually** : <br> **and on behalf of all other similarly** : <br> **situated individuals** : <br> **Plaintiff** : <br> : <br> **v.** : <br> : <br> **ELITE LIMOUSINE SERVICE, INC.,** : <br> **RONALD MONTROSS, DANIEL** : <br> **GARDELLA and STEVE SCHIANO,** <br> **Defendants** | **CIVIL ACTION NO.:** <br> <br> **3:13-cv-01880 (SRU)** <br> <br> <br> <br> <br> **SEPTEMBER 12, 2014** |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION**
**TO PROCEED AS A COLLECTIVE ACTION AND TO AUTHORIZE**
**NOTICE TO INDIVIDUALS IN THE PUTATIVE COLLECTIVE ACTION**

**I.    INTRODUCTION**

This action arises from the unlawful failure of defendants Elite Limousine Service, Inc.

("Elite"), Ronald Montross ("Montross"), Daniel Gardella ("Gardella") and Steve Schiano

("Schiano") to pay their full-time limousine drivers overtime compensation as guaranteed by the

Fair Labor Standards Act ("FLSA") 29 U.S.C. § 201 *et seq*. and the Connecticut Minimum Wage

Act ("CMWA"), Conn. Gen. Stat. § 31-58 *et seq*.  Plaintiff, Jeffrey Monk ("Monk"), now moves

for conditional certification of an "opt-in" collective action under Section 216 (b) of the FLSA

based on Defendants' violations of the FLSA.

As set forth more fully below, this motion should be granted because Monk has

demonstrated that Defendants subjected the putative class of limousine drivers to the exact same

unlawful compensation policy to which he was subjected – paying them a flat rate for each trip

that they took, regardless of the number of hours that they worked per week.  All of Defendants'

1

limousine drivers are similarly situated -- Defendants admitted in their depositions that each and every driver was paid in the same manner and that no driver was paid overtime when he worked more than 40 hours in a week.

## II.    STATEMENT OF FACTS

### A.    The Plaintiff

Monk was employed by Defendants as a Limousine Driver from February, 2011 until March, 2014.  (Declaration of Jeffrey Monk, Exhibit A, ¶ 4; Deposition of Jeffrey Monk, Exhibit B, pp. 147, 205).  He typically worked between 40 and 50 hours per week.  (Exhibit A, ¶ 5).

As a Limousine Driver, Monk was required to follow Defendants' uniform policies and procedures.  (Exhibit A, ¶ 6; *see also* Job Description, Exhibit C; Policy re: Personal Use of Vehicles, Exhibit D; Policy re: Unattended Vehicles, Exhibit E).  Most of his driving assignments involved corporate customers.  (Exhibit B, p. 178).  Monk would call in every morning at 11:00 to get his work for the afternoon.  (Exhibit A, ¶ 8; Exhibit B, pp. 182-183).  He usually received his assignments from one of Elite's dispatchers via email or text message. (Exhibit A, ¶ 9; Exhibit B, pp. 179-180).  If Monk had time between jobs, he was not permitted to do whatever he wanted; he remained "on call."  (Exhibit A, ¶ 10; Exhibit B, pp. 194-198).

Monk was not paid by the hour while working for Defendants; rather, he was paid a flat percentage of the fee charged to the customer.  (Exhibit A, ¶ 12; Exhibit B, pp. 153-156). Monk was never paid overtime compensation when he worked more than 40 hours in a week.  (Exhibit A, ¶ 13; Exhibit B, p. 153).

**B.     The Defendants**

Defendant Elite is a limousine and car service that provides such transportation services as airport travel, weddings, proms and trips to sporting events.  (Deposition of Ronald Montross, Exhibit F, p. 11).  Elite was launched in 1984 by Defendants Montross and Gardella.  (Exhibit F, pp. 4-5).  At any given time, Elite employs between 15 and 17 full-time limousine drivers. (Exhibit F, pp. 31-32).

Defendant Montross is President of Elite.  (Exhibit F, p. 6).  He oversees marketing and cash flow for Elite.  (Exhibit F, p. 20).  He also oversees Elite's Operations.  (Exhibit F, p. 70; *see also* Ronald Montross Discovery Responses, Exhibit G, Response to Interrogatory 3).

Defendant Gardella is Vice President, Secretary and Treasurer of Elite.  (Exhibit F, pp. 8-9).  He also has oversight over the operations of Elite, although he does not take an active role in the business on a day-to-day basis.  (Exhibit F., pp. 85-86; Exhibit G, Response to Interrogatory 3)

Defendant Schiano is General Manager of Elite, reporting to Montross.  (Exhibit F, p. 13).  Schiano is responsible for hiring and firing of limousine drivers.  (Exhibit F., pp. 21, 71). He also is responsible for vehicle maintenance, hiring dispatchers, reservations, purchasing and registering vehicles and overseeing limousine drivers' job performance.  (Exhibit F., p. 49).

**C.     Limousine Drivers**

All limousine drivers employed by Defendants are subject to the same rules and policies, including the manner in which they are paid.  (Exhibit F, pp. 55-59, 99-105; *see also* Exhibits D and E).  All are subject to the same job description and are expected to comply with the requirements listed therein.  (Exhibit F, pp. 107-11, 120-126, 128; Exhibit C).  The typical full-

time limousine driver does between 17 and 20 trips per week.  (Exhibit F, p. 32).

All limousine drivers are expected to call in for their assignments.  (Exhibit A, ¶ 8).
When they have time between jobs, they are expected to remain "on call" and are not free to do
what they want.  (Exhibit A, ¶¶ 10-11).

All drivers are paid in the same manner, through Elite's "Livery Coach" software.
(Exhibit F, p. 80).  They receive a percentage of the base rate charged to the customer per trip,
plus a gratuity.  (Exhibit A, ¶ 12; Exhibit F, pp. 55-59).  None of them are paid on an hourly
basis.  (Exhibit A, ¶ 12; Exhibit F., p. 59).  They are not paid overtime compensation when they
work more than 40 hours in a week.  (Exhibit A, ¶¶ 13-14; Exhibit F, pp. 81-82).

## III.   **LEGAL PRINCIPLES**

### A.    **The FLSA**

The FLSA was enacted by Congress to protect employees who are denied minimum
wages and/or overtime compensation.  The Act requires to employers pay employees a premium
overtime wage for any hours worked above 40 per week, unless the employee properly falls into
one of the exemptions provided in the Federal Regulations.  *Cooke v. General Dynamics Corp*.,
993 F. Supp. 56, 58 (D. Conn. 1997).  Because of the remedial nature of the statute, exemptions
are to be narrowly construed, and it is the employer's burden to prove that an employee "plainly
and unmistakably" falls within the exemption.  *Arnold v. Ben Kanowsky, Inc.,* 361 U.S. 388, 392,
80 S.Ct. 453, 4 L.Ed.2d 393 (1960); *Reiseck v. Universal Commc'ns of Miami, Inc.*, 591 F.3d
101, 104 (2d Cir. 2010).

**B.**      **Conditional Certification Under The FLSA**

**1.**      **The Two-Step Analysis for Certification of a Collective Action**

Section 216(b) of the FLSA provides a right of action to recover unpaid overtime compensation as provided in Section 207.  An action under Section 216(b) may be maintained as a "collective or class action" by any one or more employees for and on behalf of themselves and other "similarly situated" employees. There are two conditions for maintaining a collective action under the FLSA.  First, the putative class members must be "similarly situated."  *See* 29 U.S.C. § 216(b); *Hoffman v. Sbarro, Inc.*, 982 F. Supp. 249, 261 (S.D.N.Y. 1997).  Second, the putative class members must "opt-in" and thereby consent in writing to be bound by the result of the suit.  The collective action provisions of statutes such as the FLSA are intended to give "plaintiffs the advantage of lower individual costs to vindicate rights by the pooling of resources."  *Hoffman-La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989).  *See also Falcon v. Starbucks Corp.*, 580 F.Supp.2d 528, 541 (S.D. Tex. 2008) (citing *Hoffman*).

Most courts within the Second Circuit utilize a two-step approach to certifying collective actions under the FLSA. *See, e.g.*, *Alli v. Boston Market*, Docket No. 3:10-cv-4 (JCH) (Doc. No. 141) (D. Conn. Sept. 8, 2011) (Exhibit H); *Aros v. United Rentals, Inc*., 269 F.R.D. 176, 179-180 (D. Conn. 2010) (Hall, J.); *Morrison v. Ocean State Jobbers, Inc.*, 2010 WL 1991553 (D. Conn. 2010) (Thompson, J.) (Exhibit I); *Neary v. Metropolitan Property & Casualty Ins. Co*., 517 F. Supp. 2d 606, 618 (D. Conn. 2007) (Arterton, J.); *Holbrook v. Smith & Hawken, Ltd*., 246 F.R.D. 103, 105-06 (D. Conn. 2007) (Bryant, J.); *Francis v. A & E Stores, Inc.*, 2008 WL 4619858 (S.D.N.Y. 2008) (Exhibit J); *Barrus v. Dick's Sporting Goods*, 465 F. Supp. 2d 224, 228-29 (W.D.N.Y. 2006); *Heagney v. European Am. Bank*, 122 F.R.D. 125, 129-30 (E.D.N.Y. 1988).

At the preliminary notice stage, "plaintiffs are only required to demonstrate a factual nexus which supports a finding that potential plaintiffs were subjected to a common discriminatory scheme." *Jackson v. New York Telephone Co.*, 163 F.R.D. 429, 431 (S.D.N.Y. 1995). *See also Heagney*, 122 F.R.D. at 127 (the FLSA requires only "some identifiable factual nexus which binds the named plaintiffs and potential class members together as victims of a particular alleged discrimination").

After notice has gone out and the notice period has closed, the case will then include all those persons who voluntarily joined the case. Discovery then proceeds with regard to the members of the collective action on the issues of liability, damages, and whether Defendants acted in good faith or acted willfully.

In order to show that notice should issue to the putative collective action, Plaintiff is required only to make a "modest factual showing" that he and the members of the putative class action are: (1) similarly situated with respect to their job requirements, (2) similarly situated with regard to their pay provisions, and (3) classified as exempt pursuant to a common policy or scheme. *See Myers v. Hertz Corp.*, 624 F.3d 537, 555 (2d Cir. 2010).

### 2.    The "Similarly Situated" Requirement for Conditional Certification: Common  Scheme or Plan

Courts routinely grant certification at this first stage of collective actions under the FLSA when the putative class shares a common job title and job description classified as exempt by the employer, thereby demonstrating that the employer subjected plaintiffs to a "common scheme or plan." *Holbrook*, 246 F.R.D. at 106 (granting conditional certification for a nationwide class of Assistant Store Managers). For example, in *Scott v. Aetna Services, Inc.*, *supra*, this Court granted a motion to proceed as a collective action for a class consisting of "Systems Engineers,"

6

based upon a common job title and description.  The Court also denied the defendant's

subsequent motion to decertify the class after extensive discovery.  It did so because the

evidence:

> suggests that the actual job duties of the plaintiffs are quite similar. . . .  As
> well, Aetna classifies the employment of the plaintiffs in a single job
> category, i.e., "Systems Engineer," lists the job duties of the Systems
> Engineers in one document – the "Matrix" – and applies a blanket
> overtime exemption policy to such engineers.  Accordingly, the job duties
> of the Systems Engineers may be established by generalized proof for
> purposes of the FLSA and CMWA analyses.

*Scott*, 210 F.R.D. at 264.  *See also Nerland v. Caribou Coffee Co., Inc.*, 564 F. Supp. 2d 1010,

1014 (D. Minn. 2007) ("just as defendant was able to determine on a collective basis that all of

its store managers were employed 'in a bona fide executive ... capacity,' so, too, this Court can

determine on a collective basis whether defendant's decision was correct"); *Jirak v. Abbott*

*Laboratories, Inc.*, 566 F. Supp. 2d 845, 848-49 (N.D. Ill. 2008) (holding that pharmaceutical

representatives were similarly situated for the purposes of conditional certification).

Likewise, in *Hoffman v. Sbarro, Inc.*, *supra*, the district court conditionally certified a

FLSA collective action for all "current and former Sbarro restaurant managers" who were

allegedly misclassified as "executives" under the FLSA and who were not paid on a salaried

basis.  In *Gjurovich v. Emmanuel's Marketplace, Inc.*, 282 F. Supp. 2d 101 (S.D.N.Y. 2003), the

court conditionally certified a collective action under the FLSA brought by meat cutters against a

butcher shop alleging that their employer improperly classified them all as exempt.  In *Goldman*

*v. Radioshack Corp.*, 2003 WL 21250571 (E.D. Pa.) (Exhibit K), the court conditionally certified

an FLSA collective action for defendant's "Y" store managers who were challenging their

exempt classification.  The court stated:

> We find that the potential members of Goldman's FLSA representative
> action are "similarly situated" under the first tier test because they are all
> subjected to the same employment contract with RadioShack.  They were
> all required to work at least 54 hours per week and all were denied
> overtime pay.

*Id.* at *8; *see also Damassia v. Duane Reade, Inc.*, 2006 WL 2853971 (S.D.N.Y. 2006) (granting

plaintiffs' motion for court-authorized notice to potential opt-in plaintiffs where all of the

plaintiffs worked as Assistant Night Managers and were common victims of an illegal

application of the "bona fide executive" exemption to overtime compensation requirements)

(Exhibit L); *Brzychnalski v. Unesco, Inc.*, 35 F. Supp. 2d 351 (S.D.N.Y. 1999) (conditionally

certifying a FLSA collective action for asbestos workers because "they are all asbestos workers

who were purportedly subjected to a common scheme to deprive them of overtime

compensation"); *Bradford v. Bed Bath and Beyond, Inc.*, 184 F. Supp. 2d 1342 (N.D. Ga. 2002)

(denying a motion to de-certify a collective action of retail store department managers because of

the similarity of duties of the members of the class, holding that they were "similarly situated

with regard to employment setting and job duties").

### 3.     Court-Supervised Notice

Court-supervised notice is routinely granted in FLSA actions to further the statute's

remedial purpose. *Cuzco v. Orio Builders,* 477 F. Supp. 2d 628, 635 (S.D.N.Y. 2007); *Soler v. G.*

*& U., Inc.*, 568 F. Supp. 313, 316 (S.D.N.Y. 1983); *Frank v. Capital Cities Communications,*

*Inc.*, 88 F.R.D. 674, 676 (S.D.N.Y. 1981).  Indeed, the Second Circuit encourages the sending of

notice to "similarly situated" individuals because it "comports with the broad remedial purpose

of the [FLSA] . . . as well as with the interest of the courts in avoiding multiplicity of suits."

*Brauenstein v. Eastern Photographic Labs, Inc.*, 600 F.2d 335, 336 (2d Cir. 1979).  Articulating

the benefits of a collective action, the United States Supreme Court has stated that accurate and

timely notice concerning the pendency of a collective action is necessary in order for potential plaintiffs to make informed decisions about whether to participate in the litigation:

> Section 216(b)'s affirmative permission for employees to proceed on behalf of those similarly situated must grant the court the requisite procedural authority to manage the process of joining multiple parties in a manner that is orderly, sensible, and not otherwise contrary to statutory commands or the provisions of the Federal Rules of Civil Procedure.

*Hoffman-LaRoche, supra*, 493 U.S. at 170, 110 S.Ct. at 486, 107 L.Ed.2d 480.[1]  *See also Cook, supra*, 109 F.R.D. at 83 ("[c]ertainly, it is unlikely that Congress, having created a procedure for representative action, would have wanted to prevent the class representative from notifying other members of the class that they had a champion. . . .  Without such notice prospective plaintiffs would be unaware of the action and their right to participate as class members.") (internal quotation and citation omitted).

Such court-supervised notice is consistent with the remedial and humanitarian purposes of the FLSA.  *See, e.g.*, *Tony and Susan Alamo Foundation v. Secretary of Labor*, 471 U.S. 290, 296, 105 S.Ct. 1953, 85 L.Ed.2d 278 (1985) (the FLSA must be "consistently construe[d] liberally to apply to the furthest reaches consistent with congressional direction . . . recognizing that broad coverage is essential to accomplish the [FLSA's] goal[s] . . .").

The Supreme Court of the United States has clearly authorized and encouraged district courts to exercise their discretion early in the litigation to permit discovery of the names and addresses of former employees in order to ensure that potential plaintiffs are promptly and accurately notified.  *Hoffman-La Roche, supra*, 493 U.S. at 170.

---

[1]  Although *Hoffman-La Roche* is an ADEA case, it is equally applicable to FLSA actions since the ADEA provision at issue was, in fact, Section 16(b) of the FLSA, which is incorporated expressly into the ADEA.

**IV.**     **DISCUSSION**

    **A.**     **Plaintiff should be permitted to proceed as a Collective Action under Section 216(b) of the FLSA**

As discussed above, at the first stage of the two-step analysis of a collective action in an FLSA lawsuit, there is a minimal burden on the plaintiff to show that he and the putative collective action members are similarly situated because they are subject to a common scheme or plan on the part of the defendant.  District Courts in this Circuit have found a common scheme or plan when members of a putative class are subject to the same pay practice.  For example, in *Barry v. S.E.B. Serv. of N.Y.*, 2013 U.S. Dist. LEXIS 166746 at *15-18 (E.D.N.Y. Nov. 22, 2013) (Exhibit M), the court rejected the employer's claim that because the number of hours worked by the plaintiffs would vary, the case was not suitable for collective action treatment. The Court certified the plaintiffs' collective action based on Defendant's uniform policy of not paying its security guards for travel time:

> Although travel between worksites was not a common occurrence for uniformed guards, the practice of uniformed guards sporadically covering the shifts of fellow guards appears widespread and seems likely to lead to some travel time claims for a substantial number of uniformed guards. This practice, along with SEB's policy of not paying for travel time, warrants conditional certification of the uniformed guards' travel time claims.

*Id*. at *21-22.

In *Spencer v. No Parking Today*, 2013 U.S. Dist. LEXIS 36357 (S.D.N.Y.  March 15, 2013) (Peck, U.S.M.J.) (recommendation adopted June 7, 2013 (2013 U.S. Dist. LEXIS 80587)) (Exhibit N), the plaintiff parking attendants alleged that their employer's pay policies violated the FLSA and that because all members of the putative collective action were subject to the same

such policies, they were similarly situated.  The Magistrate Judge recommended that conditional

certification be granted:

> It is undisputed that [Plaintiff] has the same job responsibilities as other NPT parking assistants….[Plaintiff] states that he regularly worked more than forty hours per week but was not paid overtime as a consequence of NPT's policy to limit biweekly compensation to eighty hours of straight time pay, and to roll over any excess hours into the next pay period….
>
> [Defendant's] unequivocal admission during his deposition that it is NPT's policy not to pay overtime wages to parking assistants for hours worked in excess of forty hours per week further bolsters conditional certification. *See also, e.g., Hamadou v. Hess Corp.*, 12 Civ. 0250, 915 F. Supp. 2d 651, 2013 U.S. Dist. LEXIS 7657, 2013 WL 164009 at *12 (S.D.N.Y. Jan. 16, 2013) ("Courts have granted conditional certification for employees at other locations owned by a defendant based on a manager's alleged statements regarding a common unlawful policy or practice, without any further inquiry into the credibility of those statements.")….
>
> [Defendant's] testimony regarding NPT's policies and practices, coupled with the testimony that these policies are applied uniformly to all parking assistants…is sufficient to support collective action certification at the first step.
>
> *Id*. at *26-38.

In *Schemkes v. Presidential Limousine*, 2011 U.S. Dist. LEXIS 34050 (D. Nev. March

10, 2011) (Exhibit O), the court conditionally certified a collective action of "Limousine

Driver[s] or other similar percentage-of-revenue-paid employee[s] in the past three years, …who

in one or more weeks worked in excess of 40 hours in a week, and/or who w[ere] required to

purchase required uniforms and/or other supplies from their wages."  *Id*. at *8-9.  The court

explained that:

> The Complaint and declarations allege that Plaintiffs were subjected to the same practices concerning the calculation and payment of wages even though some of the rates are different. The declarations satisfy the lenient standard necessary to show that Plaintiffs' claims arise from a common policy or plan by Defendants not to pay its employees minimum wage or overtime as required by the FLSA.

*Id*.

Defendants pay policies are uniform.  As Defendant Montross testified in his deposition, all drivers are paid a percentage of the "base rate" charged to the customer for each trip.  (Exhibit F., pp. 57-59).  Monk testified that he and other drivers were paid in the same way.  (Exhibit A, ¶ 12; Exhibit B, pp. 155-156).  None of the limousine drivers are paid overtime when they work more than 40 hours in a week.  (Exhibit F, pp. 81-82; Exhibit A, ¶¶ 13-14; Exhibit B, p. 153).

Based on their membership in this group of employees, all of the members of the putative collective action have been treated as exempt from the overtime requirements of the FLSA, and thus denied overtime compensation when they worked more than 40 hours in a week.  This constitutes a common scheme or plan on the part of Defendants, and therefore all of Defendants' limousine drivers are similarly situated to each other.  This matter should therefore be permitted to proceed as a collective action.

Courts also look at whether an employer "determine[d] on a collective basis that all of its [employees in the same job title] were employed 'in [an exempt] capacity'" in deciding whether members of a putative class are similarly situated for the purposes of an FLSA collective action. *Nerland v. Caribou Coffee Co., Inc.*, 564 F. Supp. 2d 1010, 1014 (D. Minn. 2007).  The *Nerland* court explained its rationale: "[t]he court finds it disingenuous for [defendant], on one hand, to collectively and generally decide that all store managers are exempt from overtime compensation without any individualized inquiry, while on the other hand, claiming that plaintiffs cannot proceed collectively to challenge the exemption."  *Id.*  In *Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1252, 1253 (11th Cir. 2008) (*cert. denied*, 558 U.S. 816 (2009)), the Eleventh Circuit relied in part on the fact that "Family Dollar classified store managers as executives, across the board, without ever determining how store managers spent their time… [i]t was a

company wide decision that applied regardless of store size, location, sales volume, or any other individual factors" in affirming a jury verdict against a challenge to, *inter alia*, certification of the class of Store Managers. *See also Pendlebury v. Starbucks Coffee Co.*, 518 F. Supp. 2d 1345, 1352 (S.D. Fla. 2007) ("Plaintiff's similarly situated status is underscored by Defendant's own policy of classifying all Store Managers, with the exception of those in California, as exempt").

All limousine drivers employed by Defendants are similarly situated, in that they were all treated identically for the purposes of exemption from the FLSA overtime requirements. Defendants did not decide whether individual drivers should be exempt depending on their job duties or what type of car they customarily drove. Defendants' universal classification of these drivers makes them similarly situated in this regard and thus eligible for collective treatment in FLSA litigation.

Plaintiffs have provided the Court with a proposed notice, consent to join forms and order, attached as Exhibits P, Q and R, and respectfully request that the Court order that such notice be sent to all limousine drivers employed by Defendants during the relevant time period.

Pursuant to the express statutory language of the FLSA, as well as governing case law set forth above, current and former full-time limousine drivers are entitled to receive notice of the pendency of this action so that they may be advised of the issues involved in this suit and take appropriate action to protect their own rights and interests. The Court should direct that Defendants furnish the names and last known addresses of all persons who have worked as limousine drivers at any time commencing immediately preceding the filing of this motion until the present as soon as possible, so that notice can be expedited.

13

Plaintiffs specifically move for a 90-day opt in period for members of the putative collective action to file their consent forms with the Court as well as permission to send a second notice to members of the putative collective action 30 days after the start of the opt in period.

In short, Defendants can point to no facts that distinguish one driver from another regarding the manner in which they were compensated.  The testimony of Monk and Defendant Montross, the declaration of Monk, and the documentation provided in discovery all show that Defendants' limousine drivers are "similarly situated" for the purposes of the FLSA's collective action provision.

**B.**     **The Notice should be sent to all Drivers at Defendants during the 3 years preceding this motion.**

While it is the general rule that a person's claim is limited to the three years immediately preceding the filing of their consent form with the court, many courts have recently softened that rule and tolled the statute of limitations from the date the lead plaintiff files his motion for conditional certification.  Plaintiffs request that this rule be applied in this case.

Numerous courts have recognized that due to unavoidable delays in the litigation process, fairness mandates that this date be equitably tolled to include the time during which this motion is pending.  As there may be many months between the date that this motion is filed and the sending of notice to the plaintiffs if this motion is granted, it is only fair that these putative collective action members not lose time out of their unpaid overtime claims when they do not know of the lawsuit and therefore could not possibly join.

Equitable tolling is to be evaluated and applied on a case-by-case basis.  *Holland v. Florida*, 560 U.S. 631, 649-50, 130 S. Ct. 2549, 2563, 177 L.Ed.2d 130 (2010).  In deciding whether to apply this doctrine, the district court should determine whether the party seeking

14

equitable tolling "(1) has acted with reasonable diligence during the time period she seeks to have tolled, and (2) has proved that the circumstances are so extraordinary that the doctrine should apply." *Zerilli-Edelglass v. New York City Transit Auth.*, 333 F.3d 74, 80-81 (2d Cir. 2003).

As to the first question, Plaintiffs have acted with diligence in filing this motion in a timely manner.  The Complaint initiating this action was filed on December 19, 2013. Defendants answered on February 20, 2014.  Plaintiffs served Defendant with discovery requests on February 14, 2014. Defendants responded to the discovery requests on April 7, 2014.  On June 20, 2014, Plaintiff deposed Defendant Montross.  Plaintiffs have moved this case along as quickly as possible, and have filed this motion at the earliest possible juncture.

More importantly, the putative collective action members for whom the statute should be tolled have not yet had the opportunity to act diligently or otherwise, as they are not yet aware of the pendency of this claim.  It is by this motion that Plaintiffs seek to make current and former Limousine Drivers aware of their opportunity to join this suit.  *See Hoffman-La Roche*, 493 U.S. at 170, 110 S.Ct. at 486, 107 L.Ed.2d 480 ("These benefits [of proceeding as a collective action], however, depend on employees receiving accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate.").

Because Plaintiff has acted diligently in filing for conditional certification and the members of the putative class have not had the opportunity to act at all with regard to this claim, the statute of limitations should be tolled from the filing of this motion.  *See Yahraes v. Rest. Assocs. Events Corp.*, 2011 WL 844963 at *2 (E.D.N.Y. Mar. 8, 2011) (Exhibit S) (equitable tolling of limitations period from filing of motion for conditional certification granted due to

litigation delays); *Lee v. ABC Carpet & Home*, 236 F.R.D. 193, 200 (S.D.N.Y. 2006) (granting motion for equitable tolling as to the putative class due to litigation delays).

The second prong of the test for whether equitable tolling is appropriate is also met. The Second Circuit has held that "an 'extraordinary' circumstance permitting tolling of the time bar on equitable grounds might exist if the employee could show that it would have been impossible for a reasonably prudent person to learn" of the cause of action. *Miller v. International Tel. & Tel. Corp.*, 755 F.2d 20, 24 (1985). Specifically, "[t]he delay caused by the time required for a court to rule on a motion, such as one for certification of a collective action in a FLSA case, may be deemed an 'extraordinary circumstance' justifying application of the equitable tolling doctrine." *Yahraes*, *supra*, at *2; *Kemper v. Westbury Operating Corp.*, 2012 WL 4976122 at *3-4 (E.D.N.Y. Oct. 17, 2012) (Exhibit T); *McGlone v. Contract Callers, Inc.*, 867 F. Supp. 2d 438, 445 (S.D.N.Y. 2012) ("While plaintiffs wishing to pursue their rights cannot sit on them indefinitely, those whose putative class representatives and their counsel are diligently and timely pursuing the claims should also not be penalized due to the courts' heavy dockets and understandable delays in rulings. Accordingly, the statute of limitations will be tolled as of the date of the filing of this motion."); *Abadeer v. Tyson Foods, Inc.*, 2010 WL 5158873 at *3 (M.D. Tenn. Dec. 10, 2010) (Exhibit U) ("Here, given that the members of this collective action are low wage workers, members of this group who opted in had the assistance of counsel, and the necessity of time for the Court's rulings, the Court deems tolling appropriate"); *Ware v. T-Mobile USA*, 2012 U.S. Dist. LEXIS 143439 at *22-27 (M.D. Tenn. Aug. 28, 2012) (Exhibit V) (collecting cases, granting plaintiffs' motion for equitable tolling). Further, it is not necessary for a party seeking equitable tolling to show wrongdoing. *See*, *e.g.*, *Shidler v. Alarm Sec. Group,*

*LLC*, 919 F.Supp.2d 827, 831 (S.D. Tex. 2012) (holding that period of opt-in plaintiffs' claims would run beginning two years from the filing of the motion for conditional certification: "While it is true that wrongdoing by the opposing party is the most common justification for equitable tolling, it is not the only justification.  As a result, any wrongdoing by [Defendant] is irrelevant to the Court's consideration, and does not enter its analysis.").

Because Plaintiff has been diligent as to the filing of this motion, and because the opt-in plaintiffs are not aware of their right to join this suit, the Court should toll the statute of limitations in order to commence the period of the opt-in plaintiffs' claims three years prior to the filing of this motion, rather than from the filing of their individual consent forms.

## V.    <u>CONCLUSION</u>

Plaintiff and all other individuals who are or were employed by Defendants as full time limousine drivers are similarly situated.  Plaintiff's motion for permission to proceed as a collective action under the FLSA should be granted.  Moreover, it is a matter of fundamental fairness that all such employees or former employees be notified of this action and be afforded the opportunity to opt-in to this case to pursue their individual rights and protect their pecuniary interests.  Accordingly, Defendants should be ordered to produce the names, last known addresses, telephone numbers and email addresses of all persons employed as full time limousine drivers on an expedited basis so that notice and an opt-in form, as set forth in Exhibits Q and R, can be sent to these individuals.  Finally, the Court should enter an order tolling the statute of limitations from the date of filing of this motion.

Plaintiff, Jeffrey Monk, Individually and on
behalf of all similarly situated individuals


By:      _____/s/_____.
         Anthony J. Pantuso, III
         The Quinn Law Firm, LLC
         204 Broad Street
         Milford, CT 06460
         Fed No.: ct11638
         (203) 877-5400
         (203) 877-5416 (facsimile)
         apantuso@quinn-lawfirm.com
         Attorneys for the Plaintiff

18

<u>**CERTIFICATION OF SERVICE**</u>

      I certify that on **September 12, 2014** the foregoing **Memorandum of Law in Support of Plaintiff's Motion to Proceed as a Collective Action and to Authorize Notice to Individuals in the Putative Collective Action** was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by email to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the notice of electronic filing.  Parties may access this filing through the Court's CM/ECF system.

                                  _____/s/_____.
                                    Anthony J. Pantuso, III